**SO ORDERED.**

**SIGNED this 30 day of July,2014.**



_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| DAVID WILLIAM LONG, JR.<br>ALEXANDRIA HENRIQUEZ LONG | 13-04554-8-SWH |
| DEBTORS | |
| TWO OLIVES, INC. | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 13-00179-8-SWH-AP |
| DAVID WILLIAM LONG, JR. and<br>ALEXANDRIA HENRIQUEZ LONG | |
| Defendants. | |

### ORDER DENYING MOTION TO DISMISS COMPLAINT

The matter before the court in this adversary proceeding is the motion to dismiss filed by the defendants, David William Long, Jr. and Alexandria Henriquez Long, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7012(b) of the

Federal Rules of Bankruptcy Procedure. A hearing took place in Raleigh, North Carolina, on April 15, 2014. For the reasons that follow, the motion will be denied.

David William Long, Jr. and Alexandria Henriquez Long filed a petition for relief under chapter 7 of the Bankruptcy Code on July 22, 2013. On October 22, 2013, the plaintiff, Two Olives, Inc., filed the complaint in this proceeding pursuant to § 727(a)(2)(A) of the Bankruptcy Code, seeking denial of the debtors' discharge. Under section 727(a)(2)(A), a debtor shall not receive a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor . . . has permitted to be transferred . . . property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A). According to the complaint, the debtors previously owned four properties, but allowed the following three properties to go into foreclosure during the 13 months prior to filing the petition: 1811 Ridley Street, Raleigh, North Carolina (the "Ridley Property"), 710 McCulloch Street, Raleigh, North Carolina (the "McCulloch Property"), and 3612 Anclote Place (the "Anclote Property").[1] At the foreclosure sale on the Ridley Property, the mortgage lender, JP Morgan Chase, obtained the property via credit bid in the amount of its lien. The male debtor's mother, Nancy McBride, purchased the McCulloch Property at the foreclosure sale for $396,338, the total of the bank lien amounts, although the plaintiff alleges a property value of $500,000. According to the petition, the debtors currently reside at the McCulloch Property. Ms. McBride also obtained the Anclote Property through the foreclosure process, by credit bidding in the amount of her lien of $189,805.69, as she was the only lender in connection with that property. The plaintiff alleges that the Anclote Property was valued at $416,200 at the time of the sale. The substitute

---

[1] From the debtors' Schedule A, it appears that they still own real estate located at 1109 Lake Moraine Place, in Raleigh, North Carolina, although Schedule A indicates that "[d]ebtor is listed on the Deed but not responsible for the loan." Schedule A to Petition, Doc. No. 1.

trustee of the foreclosure of the Anclote Property was Robert Ramseur, who is Ms. McBride's son-in-law and the male debtor's brother-in-law. Only the Anclote Property was transferred within one year of the petition filing.

The plaintiff therefore alleges that the debtors, in allowing the Anclote Property to be transferred to Ms. McBride within one year of the petition for only the balance on the loan, against the backdrop of looming judgments against them, deprived the estate of the realization of several hundred thousand dollars' worth of equity in a non-exempt asset, and as such debtors acted with the intent to defraud creditors in contravention of § 727(a)(2)(A).[2] In addition, the plaintiff contends that the debtors's intent to defraud (or, in the alternative, hinder or delay) creditors is further evidenced by their overarching "scheme" to transfer both the McCulloch and the Anclote properties to a family member for merely the amount of the loan balances, thereby removing non-exempt assets from the estate and placing them in the hands of an insider, rather than attempting to sell the properties and maximize their value for the benefit of the estate. Finally, plaintiff cites to various badges of fraud that it argues are present in this case, and which demonstrate the debtors' intent. For these reasons, plaintiff seeks denial of debtors' discharge under § 727(a)(2)(A).

The debtors move to dismiss the complaint for failure to state a claim upon which relief can be granted, contending that no "scheme" has been alleged on the part of the debtors except allowing property to go into foreclosure. According to the debtors, no duty exists to prevent property from

---

[2] In general, section 727(a)(2) bars discharge where a debtor transfers property with the intent to "hinder, delay or defraud a creditor." 11 U.S.C. § 727(a)(2). Plaintiff contends that this statute is written in the disjunctive, such that if the court does not find that this transfer was orchestrated with fraudulent intent, discharge should still be denied if the court finds that the transfer was made with the intent to 'hinder' or 'delay' plaintiff's ability to collect. Based on the court's ruling on this motion, it is not necessary to address whether plaintiff has stated a claim for relief on these grounds.

3

being foreclosed upon. The debtors further contend that because the foreclosure sales were properly noticed and conducted, the sales were deemed to provide a "reasonably equivalent value" pursuant to BFP v. Resolution Trust Corp., 511 U.S. 531 (1994), and therefore plaintiff has not stated a claim under § 727(a)(2)(A), warranting dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Previously, the standard for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure was governed by Conley v. Gibson, 355 U.S. 41, 45-46, (1957), which provided that "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Because the rules required only notice pleading, courts construed a plaintiff's allegations liberally, accepting the plaintiff's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), however, the Supreme Court rejected the Conley standard, and instead held that a complaint must include "enough facts to state a claim to relief that is plausible on its face." The Court fleshed out this standard in Ashcroft v. Iqbal, 556 U.S. 662 (2009), holding first that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and second that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1949. The allegations must be more than a "formulaic recitation of the elements" of a claim. Id. at 1951. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that

4

a defendant has acted unlawfully." 129 S. Ct. at 1949; see also Angell v. BER CARE, Inc.(In re Careamerica, Inc.), Adv. Pro. No. L-08-00174-8-AP (Bankr. E.D.N.C. July 23, 2009) (setting out a detailed analysis of Twombly and Iqbal).

It is undisputed that the foreclosure on the Anclote property qualifies as a transfer of property under § 727(a)(2)(A), and that the transfer occurred within one year of filing the petition. The issue, therefore, is whether the facts pled state a plausible claim that the debtors had an intent to defraud creditors when they permitted this transfer (Ms. McBride's foreclosure) to occur. Because direct evidence of fraudulent intent is rarely available, "courts may instead infer actual intent from the facts and circumstances surrounding the transfer." Bane v. United States Tr., 2013 U.S. Dist. LEXIS 33469 at *8-9, n.5 (W.D. Va. Mar. 8, 2013) (citations omitted) (aff'd, United States Tr. v. Bane (In re Bane), 2014 U.S. App. LEXIS 6516 (4th Cir. 2014). In determining whether a transfer was conducted with fraudulent intent, courts look for certain indicia or "badges" of fraud, including:

> (1) if there is a lack of consideration for the transfer, (2) if there is a family relationship between the parties, (3) if there is some retention of the property for personal use, (4) if the financial condition of the debtor before and after the transfer is suspicious, (5) if there is an existence of a pattern or series of transactions after the onset of the financial difficulties or pendency of threat of suit by creditors, or (6) if there is a suspicious chronology of events and transfers.

See, e.g., Zanderman, Inc. v. Sandoval (In re Sandoval), 1998 U.S. App. LEXIS 18559 at *6 (4th Cir. 1998) (citations omitted) (unpublished); Salomon v. Kaiser (In re Kaiser), 722 F.2d 1574, 1582 (2d Cir. 1983) (identifying the same badges of fraud).

Plaintiff contends that the facts alleged are consistent with all of these badges of fraud, particularly noting:

> the inadequacy of consideration (which *BFP* prevents from being used in §548(a)(1)(B) actions, but not in other actions requiring a

5

> showing of fraud); the continued possession of the property (in the case of the McCulloch Street property); the wider context of these transfers occurring in the midst of the debtor-defendants' business failure and inevitable lawsuit of the creditor-plaintiff; and the fact that once these transfers were completed, the debtor-defendants had rendered themselves essentially insolvent.

Complaint, ¶ 24, Doc. No. 1.  Based on these allegations, the court finds that the plaintiff has plausibly stated a claim for relief.[3]  Several facts align with the badges of fraud used to determine whether a transfer was conducted with fraudulent intent, and as such, sufficient facts have been pled to give rise to an inference of the debtors' liability.  The <u>BFP</u> case cited by debtors is not applicable to this matter, in that it involved a trustee's avoidance action under § 548(a)(1)(B) of the Code, in the context of constructive fraud, as opposed to actual fraud.  Thus, the court cannot determine as a matter of law that even if the foreclosure sale at issue was properly noticed and conducted and the price was fair and adequate, that the transfer was not in and of itself a fraud on creditors or part of a fraudulent scheme.

The court readily acknowledges that a review of this case on a properly supported summary judgment motion may well yield a different result, but this proceeding is not, at this time, in that posture.  Based on the foregoing, the motion to dismiss is **DENIED.**

    **SO ORDERED.**

**END OF DOCUMENT**

---

[3] While the court may not agree with the coupling of the continued possession of the McCulloch Property to the retained possession of property badge, given that the Anclote Property is the operative property in terms of transfer occurring within one year of the petition, the fact that the debtors have remained in the McCulloch Property, which is also owned by Ms. McBride and was acquired during the "series" of foreclosures, lends support to plaintiff's allegation of a "scheme," and therefore would be relevant to the general chronology of events badge of fraud.